**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-01692-DDD-STV

SBS FRANCHISING, LLC,

        Plaintiff,

v.

CHANNEN SMITH, CHANNEN COMPANIES, LLC, ARETE PROPERTY SERVICES, LLC, CRS HOLDINGS LLC, d/b/a STRATUS BUILDING SOLUTIONS, MARVIN ASHTON, IOWA BUILDING SOLUTIONS, LLC, RAUL CUNARRO RODRIGUEZ, a/k/a RAUL CUNARRO, POMAIKAI FRANCHISING, LLC, and JOE GALLEGOS,

        Defendants/Counterclaimants,

and

STRATUS BUILDING SOLUTIONS, LLC, SBS SAN DIEGO CHANNEN CO., LLC, PHSCCH LLC, and STRATUS BUILDING SOLUTIONS OF ARIZONA, LLC,

        Defendants/Plaintiffs-in-Intervention.

---

**PLAINTIFF SBS FRANCHISING, LLC'S MOTION TO DISMISS COUNTERCLAIMS
AND COMPLAINT IN INTERVENTION**

---

**INTRODUCTION**

SBS Franchising, LLC ("SBS") is a nationwide franchisor of a franchise system that provides comprehensive cleaning and maintenance services to end customers. This lawsuit arose after SBS discovered that several of its important Master Franchisees, all owned and controlled by Defendant Channen Smith ("Smith"), were competing directly against SBS and diverting business and revenues away from SBS in direct violation of their Master Franchise Agreements with SBS. As the parties continue to explore alternative dispute resolution, Defendants (the "Counterclaimants") have filed Counterclaims, and four of Mr. Smith's other Master Franchisees (the "Intervenors") have intervened to assert their own claims against SBS through their Complaint

in Intervention (the "Intervenors' Complaint").  All of these claims seek substantially similar declaratory relief from this Court.

The Counterclaims and Intervenors' Complaint are premature as the Master Franchise Agreements between the parties require that, before beginning any legal action to interpret or enforce a Master Franchise Agreement, the parties must first attempt to resolve their disputes in mediation. The Counterclaimants and Intervenors have not satisfied that precondition. Additionally, and apart from the mediation precondition, three of the breach of contract theories alleged fail to state a claim upon which relief can be granted. Because the relevant contracts are referenced in the pleadings, the Court may review the contracts itself. Such review will reveal that the Counterclaimants and Intervenors are not entitled to relief as a matter of law on the three breach of contract theories discussed herein. Accordingly, those claims should be dismissed or stricken from the pleadings.

Pursuant to Judge Domenico's Practice Standard III.D.1., undersigned counsel conferred with counsel for the Counterclaimants and Intervenors, Mr. Aaron Bell, by telephone on Friday, September 6, 2019. Through counsel, Counterclaimants and Intervenors agreed that the deficiencies noted herein are not susceptible to amendment.

## **BACKGROUND**

The owners of SBS initiated this litigation after discovering that one of their former partners, Smith, who remained one of their largest and most important Master Franchisees following his buy-out from SBS, had betrayed them. Upon investigation, they discovered that Smith was orchestrating a covert scheme, in concert with the other Defendants, to use SBS's trademarks, trade secrets, and goodwill to establish a new business to compete directly against SBS and that would steal both prospective and current customers directly from SBS. The scheme

737499

involved myriad contractual breaches, tortious conduct, and violations of multiple statutory protections.

To put a stop to Smith's scheme and staunch the ongoing damages, SBS filed its Complaint, contemporaneously with a Motion for Preliminary Injunction. While SBS believed, at that time, that Smith owned and/or controlled eight Stratus Master Franchisees, SBS proceeded cautiously in naming defendants. SBS sued only Smith; his company, Channen Companies, LLC ("Channen Companies"); the company he had newly formed to compete against SBS, Arete Property Services, LLC ("Arete"); two Arete executives, Joe Gallegos and Marvin Ashton; and the Stratus master franchisees for Colorado, CRS Holdings LLC ("Stratus-Denver"), Hawaii, Pomaikai Franchising, LLC ("Stratus-Hawaii"), and Iowa, Iowa Building Solutions, LLC ("Stratus-Iowa"), as well as Stratus-Iowa's Regional Director, Raul Cunarro Rodriguez. SBS named each of the above defendants because SBS had uncovered evidence that they were each directly involved in Smith's scheme to divert customers and revenue away from SBS.

Recognizing that the Master Franchise Agreements ("MFAs") with all of Smith's Master Franchises require pre-litigation mediation, SBS served, contemporaneously with the lawsuit and motion for preliminary injunction, letters on all the Defendants demanding mediation. Additionally, while SBS was uncertain whether Smith's other five Master Franchisees (i.e., Stratus-Kansas, Stratus-San Diego, Stratus-Phoenix, Stratus-Nebraska, and Stratus-Delaware[1]) had been directly involved in diverting business in their territories, SBS served notices of default on *all* of Smith's Master Franchisees, including those five, noting that each of them had committed numerous violations of their respective MFAs.

---

[1] SBS was informed on August 2, 2019 that Smith relinquished his ownership interest in Stratus-Delaware, effective July 1, 2019. The remaining seven Master Franchisees owned and controlled by Mr. Smith are hereinafter referred to as the "Smith Master Franchisees."

737499

3

While the named Defendants agreed to mediation, and a mediation was scheduled to occur before the preliminary injunction hearing, they nevertheless objected to SBS's procedure of demanding mediation contemporaneously with filing suit and seeking an injunction. (*See* ECF No. 24, at 3-5). Defendants argued that the mandatory mediation provision of the MFAs "by its plain terms precludes the filing of any lawsuit . . . prior to the completion of such mediation[,]" and that, "failure to comply requires dismissal of any action filed in violation of their terms." (*Id*. at 3). SBS replied to this argument by pointing out that the MFAs contain a "remedies" provision that permits SBS to seek immediate injunctive relief to prevent violations of the non-competition covenants and the irreparable harm that such violations cause. (*See* ECF No. 36, at 2-3). SBS argued that it was entitled to obtain interim injunctive relief maintaining the status quo pending the mediation. (*Id*.) This Court was never required to rule on the issue because the parties agreed to a stipulated preliminary injunction during the mediation. (*See* ECF No. 37).

The mediation was held before the Honorable Larry Naves of the Judicial Arbiter Group on July 15, 2019. While the parties reached agreement on a preliminary injunction, they did not settle SBS's claims. Those claims include, *inter alia*, breach of the MFAs' in-term covenant not to compete, in-term covenants not to solicit or divert "any source of SBS business or revenue" or any employee of SBS, trademark infringement and dilution, misappropriation of trade secrets, intentional interference with contractual relations, violation of the Colorado Deceptive Trade Practices Act, C.R.S. § 6-1-105, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq.

Since the July 15 mediation, the litigation has proceeded and discovery is under way. In a gambit to gain leverage in ongoing settlement negotiations, Defendants have now asserted Counterclaims. (*See* ECF No. 56). Additionally, the four Intervenors intervened and moved to

737499

assert their affirmative claims, which are identical to the Counterclaims asserted by Defendants. (*See* ECF No. 53). SBS did not object to either Defendants' motions to amend to add Counterclaims or to the Intervenors' motion to intervene, but reserved its rights to file a motion to dismiss, which it does now.

The Counterclaimants and Intervenors assert two counts against SBS.[2] First, they seek a declaratory judgment, declaring that SBS has materially breached its obligations under the MFAs, the Membership Interest Redemption Agreement ("MIRA"), and the Non-Competition Agreements ("NCA"), and that they are therefore discharged from any and all obligations to SBS under those agreements. In particular, the Counterclaimants and Intervenors accuse SBS of the following alleged contractual breaches:

- Breach of a provision of the MFA that allows the Master Franchisees to exercise independent control over their own business and operations. (*See* ECF Nos. 53 and 56, ¶ 137).

- Breach of MFA provisions promising that SBS will provide training and marketing support to master franchisees. (*Id.*, ¶¶ 138, 139).

- Breach of an unidentified MFA provision that purportedly requires SBS to protect master franchisees from liability stemming from its relationships with unit franchisees. (*Id.*, ¶ 140).

- Breach of obligations under the MFAs and MIRA by improperly contacting employees of Mr. Smith, Channen Companies, and the Master Franchisees. (*Id.*, ¶ 141).

---

[2] The only substantive difference between the Defendants' Counterclaims and the Intervenors' Complaint are the identities of the claimants/plaintiffs. Even the paragraph numbers of the substantive allegations align so that the same allegation appears at the same paragraph in each document.

737499

- Breach of obligations under the MFAs and MIRA by attempting to bar Defendants from engaging in residential cleaning services, and commercial or residential landscaping, recycling, and snow removal services. (*Id.* at ¶ 142).

The Counterclaimants' and Intervenors' second count seeks a declaratory judgment stating that neither the MFAs, the MIRA, nor the NCAs prevent the Counterclaimants and Intervenors from performing residential cleaning services, landscaping services, snow removal services, or recycling services.

SBS now moves to dismiss the Counterclaims and Intervenors' Complaint for two reasons. First, contrary to their own prior arguments against SBS, the Counterclaimants and Intervenors have ignored a mandatory mediation provision in their agreements with SBS. Second, three theories of relief under the first breach of contract count fail to state a claim as a matter of law, and therefore should be dismissed or stricken.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1017 (10th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "The complaint must set forth sufficient factual allegations 'to raise a right to relief above the speculative level.'" *Id.*

737499

All of the Counterclaimants' and Intervenors' claims are based on the various contracts between the parties, including the MFAs, the NCAs, and the MIRA. Because these agreements are specifically referenced, they are incorporated into the Counterclaims and Intervenors' Complaint and the Court may take notice of them in ruling on this motion to dismiss. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). The same is true with regard to the various SBS letters that are referenced throughout the Intervenors' Complaint. For ease of reference, a copy of one of the MFAs and the MIRA are attached as Exhibits A and B, respectively, to the Attorney Declaration of Daniel Deane ("Deane Decl.") attached hereto as Exhibit 1. An exemplar copy of the SBS correspondence referenced in the Counterclaims and Intervenors' Complaint is attached as Exhibit C to the Deane Declaration.

## ARGUMENT

**I.    The Court should dismiss the Intervenors' Complaint for failure to comply with the MFAs' mandatory mediation requirement.**

As Defendants argued in response to SBS's motion for preliminary injunction, the MFAs have a mandatory pre-litigation mediation provision, which provides in pertinent part as follows:

> If a dispute arises between the parties, then before beginning ***any legal action to interpret or enforce this Agreement***, the parties agree first, to enter into formal non-binding mediation in accordance with the laws and regulations of Missouri. . . . Upon initiation of mediation, the mediation procedures will be mutually agreed between the parties and a mediator selected by SBS. Good faith participation in the mediation process, is a ***precondition to maintaining any legal action*** to interpret or enforce this Agreement.

(Deane Decl., Ex. A at 26, MFA § XIV.A) (emphasis added)).

Given the Defendants' prior position in this case, it is unnecessary to repeat their own argument that the mandatory, pre-litigation mediation provisions are enforceable and, accordingly, a failure to comply with them should ordinarily result in dismissal of any pre-mediation litigation brought before they are satisfied. (*See* ECF No. 24, at 3-4 (collecting cases)). SBS did not argue

737499

to the contrary. Rather, SBS merely argued that, pursuant to the "remedies" provision of Section XII of the MFAs (the non-competition covenant), it was entitled to seek immediate injunctive relief to stop any irreparable harm being caused by Defendants' violations of the covenants not-to-compete and non-solicitation, while simultaneously demanding mediation. (*See* ECF No. 36, at 2-3). SBS also noted that its Complaint brings several statutory claims independent of the contractual relationships between the parties (e.g., trademark infringement and trade secret misappropriation), claims that would not be subject to the mediation provision, which only applies to an "action to interpret or enforce this Agreement." (*Id*. at 3).

Moreover, SBS did not ignore mediation altogether. SBS sought the Court's endorsement of two parallel tracks, allowing SBS to make its case for preliminary injunctive relief simultaneous with pursuing mediation. Here, the Counterclaimants and Intervenors have disregarded the mediation requirement by filing their Counterclaims and Intervenors' Complaint without any recognition of the obligation to mediate.  More than that, their counsel rejected SBS's counsel's overtures to re-convene the mediation before Judge Naves.

The Counterclaimants and Intervenors will likely argue that they satisfied the mediation requirement by participating in the mediation conducted before Judge Naves on July 15. But neither asserted any affirmative claims against SBS prior to that mediation. To be sure, Defendants objected to SBS's motion for preliminary injunction, and in an Answer filed on July 3, 2019, they denied all of SBS's claims. Defendants also disputed SBS's interpretation of the covenants against competition and solicitation. But, prior to the July 15 mediation, Defendants did not assert any claims. (*See* ECF No. 33). Nor was there any indication that non-parties, such as Smith's non-defendant Master Franchisees, would seek to join the litigation. Thus, the claims the

737499

Counterclaimants and Intervenors now seek to prosecute were not noticed in advance of or during the July 15 mediation.

The Counterclaimants and Intervenors should not be permitted to invoke the mediation agreement only when it suits their purposes. The Counterclaims and Intervenors' Complaint should be dismissed without prejudice until such time as mediation has been completed.

**II.    The Court should dismiss several of the Intervenors' breach of contract claims for failure to state a claim as a matter of law.**

Three of the breach of contract theories recited in the Counterclaims and Intervenors' Complaint fail to state a claim upon which relief can be granted.

First, the Counterclaimants and Intervenors assert that SBS breached its obligations under the MFAs and the MIRA by "failing to allow Smith on behalf of the Master Franchises to operate the Master Franchises with independent control and direction of the businesses by threatening to take over billing, accounting, and collection responsibilities." (ECF Nos. 53 and 56, ¶ 137). As support for this contract breach claim, the Counterclaimants and Intervenors cite to a specific passage of the MFA, where it provides that "SBS has no right to control the business or operation of the Master Franchisee." (*Id.*, ¶ 33).

But the Counterclaimants' and Intervenors' citation is misleading as it omits the preceding caveat: "***Except as specifically provided in this Agreement***, SBS has no right to control the business or operation of Master Franchisee, to control the expenditure of its funds, approve its Unit Franchisees or to hire to terminate any of Master Franchisee's employees[.]" (Deane Decl., Ex. A at 14-15, MFA § XI) (emphasis added). The purpose of Section XI of the MFAs, titled "Independent Contractor Status," is to verify that the MFA is a franchise agreement, not an employment or joint venture agreement.

737499

9

Given the nature of a franchise system, the MFAs' Independent Contractor provisions are subject to important and specific exceptions. For example, in exchange for a license to establish and operate an SBS Master Franchise, each Master Franchisee agrees, *inter alia*, to pay royalties based on gross revenues, to submit reports on revenues, to contract with a minimum number of Unit Franchisees, and to strictly adhere to the uniform practices and operation for SBS Master Franchises. (*See id.*, Ex. A at 3-7, MFA §§ IV, V, VI). Additionally, as relevant to this claim, the Smith Master Franchisees each agreed that, if they failed to make prompt or timely payment of any monies owed to SBS, or if "SBS has any other reason to believe that Master Franchisee is retaining funds in its possession or control in conflict with the terms of this Agreement[,]" then SBS has the right to "assume responsibility for computerized or manual billing and accounting services to business serviced by Master Franchisee or its franchisees." (*Id.* Ex. A at 23, MFA § XVI).

In interpreting the MFAs, this Court must review the contract as a whole and give meaning to challenged terms so that they harmonize with all other terms and the broader purposes of the agreement. *Cockriel v. Allstate Ins. Co.*, No. 14-CV-01064-KLM, 2015 WL 3826790, at *5 (D. Colo. June 18, 2015) (quoting *Bledsoe Land Co. LLLP v. Forest Oil Corp.,* 277 P.3d 838, 846 (Colo.App. 2011)). It is also hornbook contract law that "specific clauses of a contract control the effect of general clauses." *Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 412 P.3d 709, 714 (Colo. App. 2015), *aff'd and remanded*, 395 P.3d 788 (Colo. 2017). Here, Section XI of the MFAs sets out the general proposition that the Master Franchisees are independent contractors, but, as a part of the bargain struck, they are subject to certain specific limitations and exceptions, one of which is that the franchisor has the right to take over billing and

737499

10

accounting if the franchisor has reason to believe its Master Franchisee is not fully disclosing its revenues. Thus, as a matter of contract interpretation, this claim fails as a matter of law.

Moreover, even if the Counterclaimants' and Intervenors' interpretations of the MFAs were correct, their claim is premature as it is premised on SBS merely "threatening" to take over billing and accounting by sending a letter to the Master Franchisees. The Counterclaimants and Intervenors do not claim, because they cannot, that SBS actually did take over their billing and accounting. SBS provided notice that it believed the Master Franchisees had failed to make "prompt and timely payment of monies owed to SBS" and that SBS therefore intended to exercise its rights under Section XVI of the MFAs. Ultimately, following exchange of correspondence with the Counterclaimants' and Intervenors' counsel, SBS elected to first pursue the less disruptive remedy of requiring an audit instead. (*See* ECF Nos. 53 and 56, ¶ 114). Merely providing notice of SBS's belief that the Master Franchisees are withholding monies owed and that SBS therefore had a contractual right to take over billing and accounting is not akin to an actual takeover of the Master Franchisees. (*See id.*, ¶¶ 116-117 (stating the harm that will allegedly befall the Smith Master Franchisees "*[i]f* SBS takes over the billing")).

Second, and relatedly, the Counterclaimants and Intervenors allege that "SBS further breached its obligations under the MFAs and the MIRA by improperly contacting employees of Smith, Channen Companies, and the Master Franchisees and making statements to those employees jeopardizing the Smith entities' ongoing business relationships and [their] operation of business[.]" (*Id.* ¶ 141). The SBS letters allegedly violated the MFAs "because SBS contacted the Master Franchise employees directly thereby assuming control of how the Master Franchises are operated." (*Id.* ¶ 109). The Counterclaims and Intervenors' Complaint also allege in conclusory fashion that the SBS letters violated the MIRA, (*id.* ¶ 110), and breached the covenant of good

737499

faith and fair dealing "by undermining the Master Franchisees' ability to continue independent operations," (*id*. ¶ 108).

Counterclaimants and Intervenors treat the Independent Contractor provision as though it were some monolith, stripping SBS of all rights that a franchisor would ordinarily have over its franchisees and trumping all other provisions of the MFAs. Again, however, the provision is modified by more specific contractual language that allow SBS to protect its proprietary system. In particular, Section XVII provides SBS with the right to notice defaults and terminate noncompliant Master Franchisees. (*See* Deane Decl., Ex. A at 23-24, MFA § XVII (setting forth procedures for providing notice of default and for terminating) & Ex. A at 28, MFA § XX (setting forth process for delivering written notices to Master Franchisees)). All the SBS letters referenced in the Counterclaims and Intervenors' Complaint provide SBS's notice to the Master Franchisees, via their owners and Regional Directors,[3] of various MFA defaults, and of SBS's intentions to undertake remedial actions that are specifically permitted by the MFAs. (*See id*., Ex. C). None of these letters purports to "assume control" of the Master Franchisees, nor can the mere provision of notice be considered akin to a "take over." Finally, as noted above, none of these remedial actions has yet occurred.

SBS's alleged breach of the MIRA and the NCAs should be disregarded as the Counterclaimants and Intervenors make no attempt to explain how SBS's notices to its Master Franchisees constitute a breach of that agreement. (*See* ECF Nos. 53 and 56, ¶ 110); *Tax Servs. of Am., Inc. v. Mitchell*, 2007 WL 4522472, at *2 (D. Colo. Dec. 18, 2007) ("Bare-bones, conclusory allegations such as pled here are insufficient to withstand a motion to dismiss.")

---

[3]    Pursuant to Section XII of the MFAs, the owners of each Master Franchisee, as well as their Regional Directors, other officers and managers, and all other people with supervisory or management positions, are defined as "Key Participants" for purposes of the covenants against competition and solicitation. (Deane Decl., Ex. A, at 15-16, MFA §§ XII.A., XII.D.).

737499

(citing *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007)). And no basis for either the Counterclaims or the Intervenors' Complaint is apparent on the face of those agreements. The MIRA memorialized SBS's redemption of Smith's ownership interests in SBS in May 2018. Neither the Counterclaimants nor the Intervenors are parties to the MIRA and the MIRA does not grant any right to own or operate SBS master franchises. (*See* Deane Decl., Ex. B). The NCAs, meanwhile, impose obligations on the Master Franchisees and their Key Participants, not on SBS.

Likewise, the implied covenant of good faith and fair dealing cannot save the Counterclaimants' and Intervenors' claims as that doctrine does not add additional rights, obligations, or limitations to the agreements that clearly permit SBS to do exactly what it is alleged it did here. *See McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 967 (Col. App. 2015) ("The implied duty of good faith and fair dealing cannot, [h]owever, . . . contradict terms or conditions for which a party has bargained.") (citation omitted).

Third, the Counterclaimants and Intervenors allege that SBS "further breached its obligations under the MFA by failing to protect the Master Franchisees from liability resulting from the treatment of franchisees as independent contractors in the Stratus System." (ECF Nos. 53 and 56, ¶ 140; *see also id.*, ¶¶ 66-68 (alleging SBS has "failed to take steps to ensure" that state regulators do not bring actions against the Master Franchisees for improperly treating Unit Franchisees as independent contractors)). Yet again, this claim is not supported by any contractual language.

To the contrary, the Independent Contractor provision, upon which the Counterclaimants and Intervenors rely for their claims, specifically provides that the Master Franchisees indemnify and hold SBS harmless of all claims relating to their operation of an SBS master franchise:

737499

> The Master Franchisee agrees to indemnify, defend and save harmless SBS from all damages, fines debts, expenses (including attorneys fees and court costs), charges, suits, proceedings, claims, demands or actions of whatever kind or nature, arising or growing out of or otherwise connected with or related to the Master Franchisee's maintenance and/or operation of the business licensed by this Agreement.

(Deane Decl., Ex. A, MFA § XI).

In a separate provision, entitled "Insurance & Indemnification," the Master Franchisees again agree to indemnify SBS for all loss or damage arising from "the operation of the Master Franchise's business." (*Id.*, MFA § XIII). That same provision requires the Master Franchisees to carry insurance, including coverage for "employer's liability." (*Id.*) Thus, SBS specifically disclaimed any liability for ensuring the Master Franchisees' compliance with employment laws. Moreover, as with the Counterclaimants' and Intervenors' "take over" claim, the Counterclaims and Intervenors' Complaint stops short of alleging that the Smith Master Franchisees have actually been found liable of any laws by any regulator or in any private party action. (*See* ECF Nos. 53 and 56, ¶ 68 (alleging only that the Master Franchisees "have been exposed to liability")).

## CONCLUSION

For the foregoing reasons, SBS respectfully requests that this Honorable Court:

A.     Dismiss the Counterclaims and Intervenors' Complaint in full to permit mediation of the claims;

B.     Alternatively, stay adjudication of the Counterclaims and Intervenors' Complaint until such time as mediation on the claims alleged therein has been completed;

C.     At a minimum, enter a ruling dismissing and/or striking three of the Counterclaimants' and Intervenors' breach of contract theories: (i) that SBS breached the MFAs and MIRA by taking over control of the Master Franchisees' operations, (ii) that SBS breached

737499

the MFAs and MIRA by improperly contacting the Smith Master Franchisees' employees, and (iii)

that SBS breached the MFAs by failing to protect the Smith Master Franchisees from liability; and

       D.      Grant any such further relief as the Court deems just and equitable.

                                       Respectfully submitted,

                                       **SBS FRANCHISING, LLC**

                                       By its attorneys,

                                       ***ROBINSON, WATERS & O'DORISIO, P.C.***

Dated:  September 10, 2019         By: *_/s/ Harold R. Bruno III_____*
                                    Harold R. Bruno III
                                    Elizabeth Michaels
                                    1099 18th Street, Suite 2600
                                    Denver, CO 80202
                                    (303) 297-2600
                                    hbruno@rwolaw.com
                                    emichaels@rwolaw.com

                                    ***NIXON PEABODY LLP***
                                    W. Daniel Deane
                                    Nathan P. Warecki
                                    900 Elm Street, 14th Floor
                                    Manchester, NH 03101
                                    (603) 628-4000
                                    ddeane@nixonpeabody.com
                                    nwarecki@nixonpeabody.com

## **PRACTICE STANDARD III.A.1 STATEMENT**

      I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.

                                       */s/ Harold R. Bruno III*_____

737499

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September, 2019, I served the foregoing via CM/ECF to the following counsel of record:

**THE HUSTEAD LAW FIRM**
Patrick Q. Hustead
Aaron M. Bell
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
303-721-5000
amb@thlf.com
pqh@thlf.com
*Counsel for Defendants*

**WINGET, SPADAFORDA, & SCHWARTZBERG, LLP**
Derek C. Anderson
Susie Youn
2440 Junction Place, Suite 101
Boulder, CO 80301
720-699-1800
Anderson.d.@wssllp.com
Youn.s@wssllp.com
*Counsel for Defendants*

*/s/ Chantel Ginwright*_____

737499

16